United States District Court

Eastern District of California

Tracy Elizabeth Kaufman,

    Petitioner,           No. Civ. S 01-1720 DFL PAN P

  vs.                  Findings and Recommendations

Gloria Henry,

    Respondent.

-oOo-

Petitioner, a prisoner without counsel, challenges the sentence imposed for convictions for violating California law. See 28 U.S.C. § 2254. Respondent opposes. Petitioner filed no traverse.

In 1997, Kaufman lived with her boyfriend, Joseph Engle, and her five children. CT. 67. Both Kaufman and Engle were addicted to methamphetamine. CT. 76. On April 26, 1997, Engle repeatedly submerged the youngest child in water until she finally "was not herself." CT. 69-70. Emergency personnel found Engle and

another man giving Kaufman's two-year old daughter cardio-pulmonary resuscitation.  CT. 83.  Two days later the child died.  CT. 69.

Police investigation revealed that from August 1, 1996, through April 26, 1997, Kaufman and Engle had been abusing and molesting Kaufman's children.  The state charged Kaufman with murder, felony assault on a child, five acts of willful cruelty to a child, 15 willful lewd and lascivious acts upon a child under the age of 14 and four false imprisonments. RT. 19-20; CT. 24.

Kaufman entered pleas of guilty to ten lewd and lascivious act upon a child under the age of 14, five acts of willful cruelty to a child and three false imprisonments in exchange for a maximum of 92 years' imprisonment and dismissal of the other charges.  RT. 17-32.

The trial judge sentenced petitioner to consecutive terms totaling 72 years and eight months of imprisonment.  RT. 45-65; CT. 94-99.

Petitioner appealed.  The appellate court affirmed in a reasoned decision, but remanded for re-sentencing because of a state-law error.  The following is the court's decision rejecting petitioner's Eighth Amendment claim:

> Cruel and Unusual Punishment
>
> Defendant contends the aggregate sentence imposed in this matter constitutes cruel and unusual punishment under both the state and federal constitutions. However, because defendant failed to raise the issue below, it is waived. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.)

The contention also has no merit.[1]  The Eighth Amendment to the federal Constitution "'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135.)  A punishment also may violate the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)  *Lynch* suggests three areas of focus: (1) the nature of the offense and the offender; (2) a comparison with the punishment imposed for more serious crimes in the same jurisdiction; and (3) a comparison with the punishment imposed for the same offense in different jurisdictions.  (*Id*. at pp. 425-427.)  Disproportionality need not be established in all three areas.  (*People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38.)

Defendant contends all three areas of focus demonstrate the disproportionality of the sentence imposed in this matter.  Regarding the offense and the offender, defendant argues the crimes were not planned or premeditated and, while she did fail to protect her children, defendant "was a battered woman who had no proclivity to aid, much less commit, any such offenses until Mr. Engle came into her home."  According to defendant:  "Engle even had [defendant] locked in her room for most of the time on the day [defendant's] child died" and she "immediately sought help for her children upon the first contact with police after Engle's actions resulted in the death of her child."  Defendant argues her age also militates against the long sentence imposed because she "will be, to say the least, toward the very end of her life before she is released."

Regarding the other factors, defendant argues the sentence imposed is "on a par with" those imposed in more heinous sex offense cases in this state.  She points out in particular that Engle will be eligible for parole "far sooner than" defendant.  Defendant argues her sentence "stands in stark contrast . . . to the term of 25 years to life commonly authorized and imposed on those who commit or aid and abet a murder with far more premeditation than is present here and with far more serious prior records."  (Original

---

[1] Although we have concluded the matter must be remanded for resentencing, section 667.6, subdivision (d), mandates full consecutive terms for the 10 sex offenses.  Hence, any new sentence imposed is not likely to be much shorter than that imposed originally.  The same cruel and unusual punishment issue is therefore likely to reappear.

3

italics.) Finally, defendant argues that "under section 667.6, sex offenders in California 'will be subject to some of the longest sentences in the country.'"

Defendant's characterization of the offenses and the offender in this instance is premised on a one-sided view of the information contained in the probation report. Much of this information came from defendant's own self-serving statements. However, the remainder of the report paints a more disturbing picture. Originally, defendant denied any wrongdoing in the abuse of Rebecca which eventually led to the child's death. Later, she gave different, conflicting descriptions of the incident. Only when confronted with stress analyzer test results suggesting she was not being completely truthful did defendant admit she was present when the child was held under water several times by Engle.

More importantly, defendant admitted to four incidents of false imprisonment and 10 incidents of lewd and lascivious conduct perpetrated on Matilda, all of which defendant aided and abetted, and five incidents in which her children either were "beaten with whips or submerged under water in ice cold baths" with defendant's knowledge and failure to do anything to prevent it.

Regarding the molestations, Matilda described incidents in which Engle "put her to sleep" by injecting her with methamphetamine or making her drink it. Matilda would later wake up with her underwear off and Engle lying next to her naked. Engle forced Matilda to put her mouth on his penis and to put her hand on his penis and "go up and down." On another occasion, Engle threatened to kill Matilda or her mother and then forced Matilda to stay in his bedroom while he and defendant engaged in sex. Another time, defendant put a blindfold on Matilda and had Matilda put her mouth on his penis and had sexual intercourse with her. Engle had sexual intercourse with Matilda on several occasions, during one of which defendant was present and holding Matilda's hand. On one occasion, defendant kept Matilda home from school so Engle could have sex with her because defendant thought this would improve defendant's relationship with Engle. When Matilda resisted Engle's advances, defendant tried to talk her into cooperating and even "slapped Matilda in the face and told her to shut up." Engle had defendant apply fingernail polish and makeup to Matilda to "get

4

her in the mood." Later, defendant watched as Engle's hips thrust up and down on top of Matilda.

Regarding defendant's assertion that she immediately sought help for her children after the death of Rebecca, this stands in stark contrast to her failure to take the advice of social workers, school officials and Child Protective Services workers who had made contact with her about her children. It was only when a death occurred and the police got involved that defendant began to cooperate with authorities.

Defendant aided and abetted 19 separate offenses against the children whose ages ranged from 2 to 11. Defendant was the one person to whom those victims should have been able to look for protection and safety. Instead, they were used as pawns in defendant's quest to satisfy her drug craving and improve her relationship with her chosen mate.

While it is true Engle may be eligible for parole before defendant, the anomaly in this is not that defendant's punishment is too harsh but that Engle's may be too lenient. We will not speculate as to why Engle was permitted to plead guilty to only a few of the 35 offenses charged. Suffice it to say that under the extreme facts of this case, we find nothing in the sentence imposed which is either grossly disproportionate to the crimes committed (*People v. Cartwright*, *supra*, 39 Cal.App.4th at p. 1135) or is so disproportionate to the crimes that it shocks the conscience and offends fundamental notions of human dignity (*In re Lynch*, *supra*, 8 Cal.3d at p. 424).

Petitioner filed a petition for review in the California Supreme Court which summarily denied the petition.

On remand the trial court vacated the original sentence and sentenced Kaufman to consecutive terms totaling 72 years' imprisonment.

Kaufman did not appeal the new sentence.[2]

---

[2] Since Kaufman did not appeal the new sentence she has not exhausted available state remedies. 28 U.S.C. § 2254(b)(1); While the court recognizes respondent has not waived the exhaustion requirement, the court is statutorily authorized to deny relief without requiring Kaufman to exhaust. 28 U.S.C. § 2254(b)(2), (3).

5

This court cannot grant habeas relief unless the state court's determination of petitioner's claim was contrary to or an unreasonable application of federal law as clearly established by the United States Supreme Court or was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254.  A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  Williams v. Taylor, 529 U.S. 362, 413-14 (2000).  A decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle but applies that principle to the facts of the prisoner's case in a manner that is "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63 (2003).  "Clearly established federal law" is defined as the holdings of the United States Supreme Court existing when the state court issued its decision.  Williams, 529 U.S. at 412.  Circuit law is "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law.  Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).  Where the state court summarily denies the petition without comment, the district court will look to the last reasoned state decision on the issue.  Ylst v. Nunnemaker, 501 U.S. 797 (1991).  If none exists, the district court must independently review the record to determine

whether the state ruling was contrary to or an unreasonable application of clearly established federal law. Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000).

Factual determinations by state courts are presumed correct; the presumption may be overcome only by clear and convincing evidence and this court may not grant a writ upon a claim dependent upon a determination of the facts unless it finds the state court decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2), (e)(1).

Petitioner was sentenced to serve ten six-year terms for committing lewd and lascivious act upon a child under the age of 14, four years for one act of willful cruelty to a child, four 16-month terms for four other acts of willful cruelty, and four eight-month terms for four false imprisonment for a total of 72 years and eight months. Each of the prison terms imposed was within the statutory range and Kaufman does not challenge any particular term of years. See Cal. Pen. Code §§ 273a(a), 288(b), 236, 237 (West 1998). Instead, Kaufman claims the consecutive terms of imprisonment totaling 72 years constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Federal law mirrors the state law relied upon by the state appellate court. Harmelin v. Michigan, 501 U.S. 957 (1991). The state court's determination of petitioner's claim was not contrary to or an unreasonable application of federal law as clearly established by the United States Supreme Court nor was ot based

7

1  upon an unreasonable determination of the facts in light of the
2  evidence.
3       For these reasons, I hereby recommend petitioner's
4  application for a writ of habeas corpus be denied.
5       Pursuant to the provisions of 28 U.S.C. § 636(b)(l), these
6  findings and recommendations are submitted to the United States
7  District Judge assigned to this case.  Within 20 days after being
8  served with these findings and recommendations, petitioner may
9  file written objections.  The document should be captioned
10 "Objections to Magistrate Judge's Findings and Recommendations."
11 The district judge may accept, reject, or modify these findings
12 and recommendations in whole or in part.
13      Dated:  September 8, 2005.

                                        /s/ Peter A. Nowinski
                                        PETER A. NOWINSKI
                                        Magistrate Judge